# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOSHUA ROBERTS,

     Plaintiff

v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, et al.,

     Defendants

Case No.: 2:18-cv-00649-APG-NJK

**Order (1) Granting in Part the Defendants'
Motion for Summary Judgment, (2)
Denying the Defendants' Motion to Strike,
and (3) Denying the Plaintiff's Motion for
Leave to File Sur-Reply**

[ECF Nos. 39, 48, 59]

Plaintiff Joshua Roberts alleges that during an arrest, defendant police officer Steve Devore kicked him in the face and ribs. He also contends the other defendant officers failed to intervene and then conspired to cover up Devore's use of excessive force by falsely claiming Roberts came by his injuries through other means and by falsely charging him with the crime of battery with use of a deadly weapon. He thus asserts a claim under 42 U.S.C. § 1983 for excessive force against the three arresting officers, conspiracy against all defendants, and assault and battery against the three arresting officers.

Defendants Las Vegas Metropolitan Police Department (LVMPD), Sheriff Joe Lombardo, Andrew O'Grady, Brian Jackson, Brendon LeBlanc, and C. Lilienthal move for summary judgment. First, they argue no one but Devore is alleged to have used excessive force by kicking Roberts in the face and ribs, so they did not personally participate in the violation alleged in count one. Alternatively, Jackson and LeBlanc contend that any force they used during the arrest was reasonable and, in any event, they are entitled to qualified immunity. As to

the conspiracy claim, the defendants[1] argue there is no evidence of an agreement or of an intent to harm Roberts. Finally, as to the assault and battery claim, they again assert there is no allegation that they assaulted or battered Roberts because only Devore is alleged to have kicked Roberts. Alternatively, they argue the amount of force they used was reasonable and they are entitled to discretionary immunity under Nevada law.

I granted Roberts' motion to extend his response deadline until March 18, 2019. ECF No. 42. Roberts then filed a "supplement" to his motion to extend time in which he requested additional time. ECF No. 47. The defendants move to strike the supplement, arguing that Roberts should have filed another motion to extend time, not a supplement to his original motion. ECF No. 48.

Roberts filed his response to the summary judgment motion on March 29, 2019. ECF No. 54. He argues that his version of events raises a genuine dispute, as do his injuries, which is not consistent with the defendants' version. In support, he attaches a letter from a doctor at the prison where he is currently housed, who opines that the number and location of Roberts' injuries is inconsistent with being hit by a car door or falling down. Alternatively, Roberts requests I defer ruling on the motion because Devore has recently been served and appeared in the case, and discovery needs to be reopened as to him. Roberts contends Devore may contradict the other defendants' version of events.

The defendants reply by noting that Roberts' response was untimely and by challenging the admissibility of the doctor's letter. Roberts then filed a motion for leave to file a sur-reply to

---

[1] Devore had not appeared in the case when the other defendants moved for summary judgment. Consequently, reference to the defendants in this order means all defendants except Devore.

address both the timeliness of his response and why he believes the doctor's letter is admissible. The LVMPD defendants oppose the motion for leave to file a sur-reply.

I deny the motion to strike because the defendants identify no prejudice from either the supplement or the late-filed opposition and cases should be decided on the merits where possible. I deny as moot the motion for leave to file a sur-reply because nothing in the sur-reply changes my analysis in this order. I grant in part the defendants' motion for summary judgment. I grant the motion as to defendants Lilienthal, O'Grady, Lombardo, and LVMPD in count two and as to defendants LeBlanc and Jackson in count three. I deny the motion as to LeBlanc and Jackson in count one.

# I. BACKGROUND

On April 20, 2016, members of the LVMPD Major Violators/Narcotics Bureau went to an address where they suspected Roberts might be staying. ECF No. 39 at 21, 82. Roberts was wanted on an active, no-bail warrant for felony grand larceny of a vehicle. *Id.* at 21. Detectives saw Roberts leave the house and get into a white car. *Id.* at 41. They tried to stop Roberts at the residence, but he drove away. *Id.*

Detective Jackson had parked his vehicle at a nearby intersection to set up a perimeter in case Roberts fled. *Id.* at 21. He heard broadcast over the radio that Roberts was in a white car. *Id.* Soon thereafter, Jackson saw a white car headed his way at a "high rate of speed." *Id.* at 21-22. Jackson positioned his car so that there was an opening for Roberts to escape by going in front of Jackson's car. *Id.* at 22.

The parties dispute what happened next. Jackson stated that Roberts began veering toward the front driver's side of his car, so he started to back up to give Roberts more room to pass in front of him. *Id.* According to Jackson, Roberts swerved towards the rear of his car and

"intentionally struck the driver's side rear portion" of Jackson's car. *Id.* LeBlanc and Devore likewise stated that Roberts drove "directly at Detective Jackson who was attempting to get out of Robert's [sic] way as Roberts intentionally struck the rear driver side of Detective Jackson['s] vehicle." *Id.* at 33, 86. Jackson broadcast to the other officers that Roberts had struck his car and he told them what direction Roberts went. *Id.* at 22.

According to Roberts, he did not swerve his car to strike Jackson's car. ECF No. 17 at 13.[2] Rather, he contends that Jackson struck his car and then falsely communicated to the other officers that he had struck Jackson's car. *Id.* at 14.

The parties agree that Roberts then drove over the sidewalk and back into the street. ECF No. 39 at 22. Devore was following him. *Id.* at 41, 87. When Roberts drove onto the sidewalk, he hit the curb, causing the passenger side axel to break. *Id.* at 41. As a result, Roberts' vehicle came to a sudden stop and Devore could not stop in time, so he crashed into the back of Roberts' car. *Id.* at 41, 87.

Jackson and LeBlanc then arrived at the location where Roberts was stopped. The parties dispute what happened at this point. According to Jackson, Roberts exited the car, and as he did, he got "bounced between his door and his vehicle." *Id.* at 22. Jackson contends he saw Roberts attempt to flee on foot and Roberts fell down "face first." *Id.* He also saw the passenger in the car, later identified as Sarah Marsden, flee on foot. *Id.* Lilienthal pursued Marsden and detained her. *Id.* at 26.

Meanwhile, Jackson saw Devore attempting to take Roberts into custody. *Id.* at 22. According to Jackson, Roberts "continued to resist and I observed Roberts curling his arms to the

---

[2] Roberts' first amended complaint is signed under penalty of perjury. ECF No. 17 at 20. I thus consider it at summary judgment as if it were his declaration or affidavit.

front of his chest." *Id.* Jackson thus grabbed Roberts' right wrist, placed his shin along the small of Roberts' back, and placed a handcuff on Roberts' right wrist. *Id.* LeBlanc stated that when he arrived on the scene, he saw Roberts lying face down while Devore attempted to take Roberts into custody. *Id.* He also saw Jackson arrive to assist Devore. *Id.* LeBlanc came over to help and heard Devore giving commands to Roberts to give the officers his hands. *Id.* According to LeBlanc, Roberts did not comply, so Jackson grabbed Roberts' right hand. *Id.* LeBlanc then grabbed Roberts' left wrist, put him in a handcuffing wristlock, and placed his knee on Roberts' right shoulder blade. *Id.* Jackson was able to get a handcuff on Roberts' right hand and Devore placed his handcuffs on Roberts' left hand, at which point they double handcuffed him and placed him in custody. *Id.*

According to Roberts, Devore was the first person who approached him after he got out of the car, and Devore kicked him several times in the face and ribs. ECF No. 17 at 4, 10-11. Roberts stated that he was on the ground, unarmed, and not resisting at the time Devore was kicking him. *Id.* at 10-11. Roberts stated that while Devore was kicking him, he heard "the voices of others, believed to be other members of the LVMPD . . . who did not intervene to stop Devore." *Id.* at 11. Roberts admits he was curling his arms in front of his chest, but he contends he was doing so to protect himself from Devore's kicks. *Id.* at 15.

After Roberts was handcuffed, the officers called for medical assistance. ECF No. 39 at 33. Roberts was transported to the hospital for treatment. *Id.* LeBlanc rode in the ambulance with Roberts. *Id.* at 41. According to LeBlanc, Roberts stated that he was sorry and that he ran because he had a warrant for his arrest. *Id.* Roberts was treated for a broken nose, several hematomas, and a small pneumothorax. *Id.* at 53-55.

Roberts was charged with battery with the use of a deadly weapon and failure to stop on signal of a police officer. ECF No. 17 at 42-43. He pleaded guilty to the failure to stop charge as well as to burglary charges in other cases. ECF No. 39 at 66-71. As part of the plea deal, the battery charge was dropped. *Id.* at 66-67.

Roberts contends that the officers falsified their reports and brought a false battery charge against him to cover up Devore's use of excessive force. He stated they all falsely reported that he intentionally rammed Jackson's car when it was Jackson who struck his car. *Id.* at 14. He also stated that they falsely attribute his injuries to being in the car accident without a seatbelt (he asserts he was wearing his seatbelt), being hit by the car door, falling down, and resisting arrest, when his injuries were actually caused by Devore kicking him. *Id.* Roberts later filed a complaint with Lombardo and LVMPD, but Lombardo did not submit the incident to the force investigation team or the critical incident review team for review. *Id.* at 13.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531

(9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Timeliness of the Opposition and Motion to Strike Supplement

The defendants move to strike Roberts' supplement to his motion to extend time, and also argue in their summary judgment reply brief that I should not consider Roberts' opposition because it was untimely.  Roberts should have filed a second motion to extend time rather than file a supplement, but I will not strike his supplement on that basis.  Although his opposition was late, the defendants do not identify any prejudice from the late response.  Given the preference for resolving cases on their merits,[3] I deny the motion to strike, and I will consider Roberts' late-filed opposition.

### B. Count One

In count one, Roberts asserts an excessive force claim against Devore, Leblanc, and Jackson.  LeBlanc and Jackson move for summary judgment, arguing that Roberts alleges only Devore kicked him.  They also argue the force they used was reasonable to restrain Roberts while he resisted being handcuffed.  Finally, they contend they are entitled to qualified immunity because no clearly established law put them on notice that placing a shin in Roberts' low back or a knee on his shoulder while he was resisting arrest would amount to excessive force under the circumstances.  Roberts responds that his version of events contradicts the defendants' and thus

---

[3] "Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

raises a genuine dispute about whether Devore kicked him and whether that constitutes excessive force. He also argues LeBlanc and Jackson are liable because they were integral participants in the violation.[4]

Excessive force in the course of an arrest is analyzed under the Fourth Amendment. *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). In determining the reasonableness of a non-deadly-force seizure, I balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003) (quotations omitted). This entails a three-step analysis. *Id.* First, I assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id.* Second, I assess "the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* Third, I weigh the gravity of the intrusion against the government's interest to determine whether the amount of force was constitutionally reasonable. *Id.*

---

[4] Roberts also contends that the defendants' motion is premature because Devore has only recently appeared in the case and he wants to pursue additional discovery against all defendants. To the extent this was meant to be a motion under Federal Rule of Civil Procedure 56(d), I deny it. Roberts does not show any basis to defer ruling on the motion beyond his unsupported speculation that perhaps Devore would contradict the other defendants. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). That is unlikely given Devore's testimony at the preliminary hearing for Roberts' state criminal charges. ECF No. 39 at 85-90. Additionally, discovery as to the other defendants closed on December 27, 2018. ECF No. 19. Roberts does not explain why he could not conduct discovery on the appearing defendants within the discovery period.

The reasonableness inquiry looks at all the relevant objective facts and circumstances that confronted the arresting officers in each particular case, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) (quotation omitted); *Smith*, 394 F.3d at 701. Additionally, the reasonableness analysis must consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Drummond*, 343 F.3d at 1058 (quotation omitted). Because the reasonableness balancing test "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," courts should grant summary judgment in excessive force cases "sparingly." *Id.* at 1056. "This is because police misconduct cases almost always turn on a jury's credibility determinations." *Id.* However, I may decide reasonableness as a matter of law if, "in resolving all factual disputes in favor of the plaintiff, the officer's force was objectively reasonable under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (internal quotation omitted).

Although only Devore is alleged to have kicked Roberts, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (stating that an "officer's liability under section 1983 is predicated on his integral participation in the alleged violation," which requires "some fundamental involvement in the conduct that allegedly caused the violation"). But an officer is liable for failing to intercede "only if [he] had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000), *as*

9

*amended* (Oct. 31, 2000).  Thus, Jackson and LeBlanc may be liable if Devore used excessive force and they had the opportunity to intercede but failed to do so or otherwise integrally participated in the violation.

Viewing the facts in the light most favorable to Roberts, a reasonable jury could find Devore used excessive force.  Roberts avers that while he was laying on the ground unarmed and not resisting arrest, Devore kicked him several times in the face and ribs.  That is substantial force.  As for the governmental interests at stake, Roberts had a warrant for the non-violent felony of auto theft, and he evaded arrest when the officers tried to stop him.  Roberts denies, however, that he rammed Jackson's vehicle.  If the jury believes him, then there was no basis for a battery charge against him.  And Roberts denies that at the time Devore kicked him he was resisting arrest.  Instead, he contends he was trying to protect himself from Devore's kicks.  Weighing the interests at stake, a reasonable jury could find that multiple kicks to the face and ribs of a non-resisting, unarmed person who was lying on the ground constituted excessive force.

A reasonable jury also could find that Jackson and LeBlanc both (1) had an opportunity to intervene and failed to do so and (2) integrally participated in the arrest and use of force.  Both Jackson and LeBlanc place themselves on the scene when Roberts was curling his arms in front of himself.  Roberts claims he was doing that to protect himself from Devore's kicks.  If the jury believes Roberts, it could find Jackson and LeBlanc were there when Devore was kicking Roberts and did nothing to stop it.

Finally, Jackson and LeBlanc are not entitled to qualified immunity.  A reasonable officer would know he cannot kick an unarmed, non-resisting suspect multiple times in the face and ribs with sufficient force to break a nose and cause a pneumothorax.  *See, e.g.*, *Blankenhorn* 485 F.3d at 480; *Lolli v. Cty. of Orange*, 351 F.3d 410, 416 (9th Cir. 2003).  And the law on a fellow

police officer's duty to intercede and liability through integral participation were clearly established long before this incident. *Blankenhorn*, 485 F.3d at 481 n.12; *Cunningham*, 229 F.3d at 1289-90; *Koon*, 34 F.3d at 1447 n.25. I therefore deny the defendants' motion as to count one.

### C. Count Two

Count two asserts all of the defendants engaged in a conspiracy to cover up Devore's use of excessive force by submitting false statements about the incident. The defendants move for summary judgment, arguing there is no evidence of an agreement or of an intent to harm Roberts. Roberts responds that because he disputes that he rammed Jackson's vehicle and sustained his injuries the way the defendants represent in their official police reports, the officers must have conspired to tell the same false story to cover up Devore's use of excessive force.

Under Nevada law, a civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted). Thus, to establish a civil conspiracy claim, a plaintiff must show: (1) the commission of an underlying tort; (2) an agreement between the defendants to commit that tort; and (3) resulting damages. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005), *overruled on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, 672 n.6 (Nev. 2008). The agreement may be shown through direct or circumstantial evidence. *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 199 (Nev. 2014) (en banc).

Viewing the facts in the light most favorable to Roberts, a reasonable jury could find Devore, LeBlanc, and Jackson conspired to falsify their stories to cover up Devore's use of excessive force. If a jury believes Roberts' version of events, then these defendants told lies

11

consistent with one another about whether Roberts rammed Jackson's vehicle and how Roberts sustained his injuries. A reasonable jury could conclude these three individuals could tell the same false story only if they agreed to do so. And the jury could conclude they did so to cover up Devore's use of excessive force and to manufacture a false criminal charge against Roberts. I therefore deny the defendants' motion as to Jackson and LeBlanc.

However, I grant the motion as to the remaining defendants. Lilienthal was the only other defendant actually at the scene at the time of the arrest. But he stated that he chased the fleeing passenger and thus was not a participant in Roberts' arrest. Lilienthal denied seeing the collision between the cars, Roberts' car come to a stop, Devore strike Roberts' vehicle, Devore take Roberts into custody, or any injury to Roberts. ECF No. 39 at 27-28. There is no evidence to the contrary. There is no evidence to suggest Lilienthal was engaged in a conspiracy with Devore, Jackson, and LeBlanc.

Likewise, O'Grady arrived on the scene after Roberts had been taken away by ambulance. ECF No. 39 at 64. There is no evidence O'Grady knew or had reason to believe the on-scene officers fabricated their stories or that he conspired with them. The same is true for Lombardo. Although Lombardo allegedly did not respond to Roberts' complaint, there is no evidence he did so because of a conspiracy. Consequently, I grant the defendants' motion as to defendants Lilienthal, O'Grady, Lombardo, and LVMPD.[5]

**D. Count Three**

Count three asserts an assault and battery claim against Devore, LeBlanc, and Jackson.[6] The defendants argue that Roberts does not allege anyone but Devore assaulted or battered him.

---

[5] Roberts does not explain why LVMPD is liable for conspiracy.

[6] The amended complaint names Lilienthal, not Jackson, in the heading to count three. ECF No. 17 at 16-17. But the allegations in count three mention Jackson and not Lilienthal. *Id.* The

They also argue any force they used was reasonable and they are entitled to discretionary immunity.  Roberts responds that the defendants were not privileged to use the amount of force they used and they are not entitled to discretionary immunity because they acted in bad faith.

To receive discretionary immunity under Nevada Revised Statutes § 41.032(2), a public employee's decision "must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007) (en banc).  Acts taken in violation of the Constitution or in bad faith are not discretionary. *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *Falline v. GNLV Corp.*, 823 P.2d 888, 892 n.3 (Nev. 1991).  For example, "where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect or a particular class of suspects (such as members of racial minority groups) or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007).

"To state an assault claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive physical contact; and (2) the victim was put in apprehension of such contact." *Estate of Sauceda v. City of N. Las Vegas*, 380 F. Supp. 3d 1068, 1088 (D. Nev. 2019). "To state a battery claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive contact; and (2) such contact occurred." *Id.*  Under Nevada law, a police officer is privileged to use the amount of force reasonably necessary to effect a lawful arrest. *See*

_____

defendants appear to understand that Roberts meant to name Jackson in count three, not Lilienthal, because Jackson was involved in Roberts' arrest while Lilienthal was not. *See* ECF No. 39 at 3.

*Yada v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996), *superseded by statute on other grounds as recognized by RTTC Commc'n, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24, 29 (Nev. 2005). Thus, an officer who uses more force than is reasonably necessary is liable for battery. *Id.* at 1262-63.

Roberts offers no evidence that LeBlanc or Jackson kicked him or that he was put in apprehension that they would. He identifies Devore as the only one who kicked him, and although he stated he heard the voices of other officers, he does not state that he was fearful they also would kick him, that they intended to kick him, or that they in fact kicked him. While LeBlanc and Jackson may be liable under the Fourth Amendment for being integral participants or because they failed to intercede, Roberts does not point to Nevada law that would extend those principles to common law assault and battery. I therefore grant the defendants' motion as to count three.

**E. Motion for Leave to File Sur-Reply**

Roberts attached to his opposition a letter from a physician at High Desert State Prison in which the physician opines that Roberts' injuries are not consistent with being caused by a takedown and instead are consistent with multiple impacts. ECF No. 54 at 15. In their reply, the defendants object to this letter because it is unauthenticated and Roberts did not identify the physician as a witness during discovery. The defendants also contend the opinion should be excluded under Federal Rule of Evidence 702. Roberts moves for leave to file a sur-reply to address both the untimeliness of his opposition and the physician letter. ECF No. 59.

I deny Roberts' motion because I have already ruled that I will consider his untimely opposition. Additionally, Roberts has shown genuine disputes even without the physician letter. I therefore need not resolve this issue at this time.

/ / / /

14

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that the defendants' motion to strike **(ECF No. 48) is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **(ECF No. 39) is GRANTED in part**.

IT IS FURTHER ORDERED that the plaintiff's motion for leave to file a sur-reply **(ECF No. 59) is DENIED**.

DATED this 25th day of September, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE